# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| BENJAMIN ESPINOSA, | 3:17-cv-00710-MMD-CBC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |
| JAMES DZURENDA, *et al.,* | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Benjamin Espinosa ("Espinosa") against Defendants Renee Baker, Dwayne Baze, Cody Beckerdite, Kelly Belanger, Travis Bennett, David Carpenter, Tara Carpenter, James Donnelly, James Dzurenda, David Gatlin, Todd Gilliland, Valaree Olivas, Jethro Parks, Maria Ward, Harold Wickham, William Sandie, and John Does[2] (collectively referred to as "Defendants").[3]  Currently pending before the court is Defendants' motion for summary judgment. (ECF Nos. 66, 68, 73.)[4]  Espinosa opposed the motion (ECF Nos. 89, 90)[5],

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Espinosa was given until October 28, 2019 to identify the Doe Defendants in this case. (*See* ECF No. 52.) However, Espinosa failed to identify the Doe Defendants, and therefore, the court recommends the Doe Defendants be dismissed from this action.

[3] Espinosa also named the State of Nevada, Jason O'Dea, Ball, Sanchez, CCSI Ferrell, and Dwayne Deal as defendants in this action. (ECF No. 14.) The State of Nevada, O'Dea, Ball, and Sanchez were dismissed at screening. (ECF Nos. 15, 24.) As to Ferrell and Deal, despite being granted extensions to serve these defendants (*See* ECF No. 52), service has not been effectuated. Thus, the court recommends dismissal of Ferrell and Deal based on Fed. R. Civ. P. 4(m).

[4] ECF Nos. 68 and 73 consist of sealed documents filed in support of the motion for summary judgment.

and Defendants did not reply.  Espinosa also filed a motion for adverse jury instruction due to spoliation of evidence (ECF No. 80).  Defendants opposed the motion (ECF No. 84), and Espinosa replied (ECF No. 87).  Finally, Espinosa filed a motion for default judgment (ECF No. 88), to which Defendants did not reply. Having thoroughly reviewed the record and papers, the court recommends Defendants' motion for summary judgment (ECF No. 66) be granted, Espinosa's motion for adverse jury instruction (ECF No. 80) be denied as moot, and Espinosa's motion for default judgment (ECF No. 88) be denied as moot.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Espinosa is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Ely State Prison ("ESP").  (ECF No. 14.) However, the events giving rise to this case took place at the Lovelock Correctional Center ("LCC").  (*Id.*)

Pursuant to 28 U.S.C. § 1915A(a), the District Court screened Espinosa's second amended complaint ("SAC") on February 27, 2019.  (ECF No. 15.)  Espinosa subsequently filed a motion for reconsideration of the screening order (ECF No. 16), which the court granted.  (ECF No. 24.)  Thus, Espinosa was allowed to proceed on the following claims: (1) portion of Count I alleging retaliation against Defendants Baker, T. Carpenter, D. Carpenter, Sandie, Gatlin, Gilliland, Olivas, Donnelly, Beckerdite, and Parks; (2) the portion of Count II alleging due process violations against Defendants Olivas, Sandie, and D. Carpenter; (3) the portion of Count II alleging equal protection violations against Defendants Baker, T. Carpenter, Sandie, Ward, Parks, Gatlin, Gilliland, Olivas, and D. Carpenter; (4) Count III alleging an Eighth Amendment violation

---

[5]   ECF No. 90 is titled "Motion for Leave to File Exhibits Under In-Camera Submission in Support of Plaintiff's Opposition to Defendants Sum. Jud. Motion" and consists of manually filed CD recordings of two of Espinosa's disciplinary hearings. The court does not find an in-camera submission of the disciplinary hearings to be necessary, but to the extent Espinosa wishes to use the CDs in support of his opposition, the court recommends the motion be granted.

against Defendants Baker, Bennett, and Bellanger; (5) Count IV alleging a violation of Nevada Constitution Article I, § 6 against Defendants Baker, Bennett, and Bellanger; (6) Count V alleging a violation of Nevada Constitution Article I, § 8 against Defendants Olivas and Sandie; and (7) supervisory liability claims against Defendants Wickham, Baze, and Dzurenda. (ECF No. 24 at 2.)

### A.   Count I – First Amendment Retaliation

In Count I, Espinosa alleges that in July or September 2016, at the request of inmate Sergio Morales, who had filed a civil rights complaint under 42 U.S.C. § 1983, Espinosa assisted Morales in filing a temporary restraining order and preliminary injunction. (ECF No. 14 at 7.) But when it came to light that Espinosa had assisted Morales in this manner, NDOC officials began to harass and retaliate against Espinosa. (*Id.* at 8.) Beginning on January 3, 2017, Ward verbally harassed Espinosa, referring to him as a liar, telling him that "when you attack NDOC, you are attacking me…I represent NDOC," and suggesting that Espinosa would never make it to the phase one yard if he continued to challenge LCC officials. (*Id.*) Espinosa filed a grievance against Ward for verbal harassment. (*Id.* at 9.) Espinosa appears to allege that, in retaliation for his grievance against Ward, Defendants directed Gatlin and Gilliland to file false disciplinary reports against him in violation of the First Amendment. (*Id.* at 27.) Later, Olivas, and D. Carpenter, at the direction of Baker, T. Carpenter, and Sandie, found Espinosa guilty without meeting the "some evidence standard." (*Id.*) The false disciplinary reports also negatively impacted Plaintiff's risk factor score. (*Id.* 28.)

### B.   Counts II and V – Fourteenth Amendment Due Process, Fourteenth Amendment Equal Protection, and Nevada Constitution Article I, § 8

In Counts II and V, Espinosa alleges that on February 16, 2017, he was served with a notice of charges and the prison held a hearing on the charges against him on March 16, 2017. (*Id.* at 15.) The disciplinary panel, which was comprised of Olivas and Sandie, conducted the hearing. (*Id.*) Espinosa alleges that despite insufficient evidence to support the charges, Olivas and Sandie found Espinosa guilty. (*Id.* at 30.) Espinosa

alleges that Olivas, and Sandie conducted the hearing without giving him the opportunity to call witnesses, obtain written statements, and view all the evidence against him in order to marshal a proper defense. (*Id.* at 29.) Espinosa also contends that Baker, T. Carpenter, Sandie, Ward, Parks, Gatlin, Gilliland, Olivas, and D. Carpenter have imposed differential treatment between him and other similarly situated inmates "as they provided proper due process to other similarly situated inmates." (*Id.* at 30.) It appears that Espinosa is singled out for his civil actions and grievances. (*Id.*) Espinosa alleges his Fourteenth Amendment due process and equal protection rights, as well as his rights under Nevada Constitution Article I, § 8 were violated.

### C.   Counts III and IV – Eighth Amendment Deliberate Indifference to Serious Medical Needs and Nevada Constitution Article I, § 6

In Counts III and IV, Espinosa alleges that in May 2017, Bennett searched Espinosa's cell and confiscated a letter from Espinosa to another inmate. (*Id.* at 24.) Bennett then passed the letter along to Bellanger and Baker. (*Id.*) Espinosa contends that Bennett, Bellanger, and Baker jeopardized his mental health treatment and placed his life at risk because the letter, taken out of context, was used to shine a negative light on his mental health treatment. (*Id.* at 32.) Later, Espinosa was denied mental health treatment. (*Id.*) As a result, Espinosa attempted to commit suicide. (*Id.*) Espinosa alleges that Bennett, Bellanger and Baker violated his Eighth Amendment rights and rights under the Nevada Constitution Article I, § 6.

### D.   Defendants' Motion for Summary Judgment

On February 26, 2020, Defendants filed a motion for summary judgment. (ECF No. 66.) Specifically, Defendants argue: (1) the material facts do not sustain a retaliation claim; (2) the material facts do not establish a violation of Espinosa's due process rights; (3) the material facts do not establish a violation of Espinosa's equal protection rights; (4) the material facts do not establish a violation of Espinosa's right to be free from cruel and unusual punishment; (5) Defendants are entitled to qualified immunity; (6) no private cause of action exists under Article I, §§ 6 and 8 of the Nevada Constitution; and (7)

4

Defendants are entitled to State discretionary immunity. (*Id.*) Espinosa opposed the motion (ECF No. 89), and no reply was filed. The recommended disposition follows.

## II.    LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT &*

1  *SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences
2  arising therefrom in the light most favorable to the nonmoving party.  *Colwell v.*
3  *Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

4  Where the moving party meets its burden, the burden shifts to the nonmoving
5  party to "designate specific facts demonstrating the existence of genuine issues for
6  trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).
7  "This burden is not a light one," and requires the nonmoving party to "show more than
8  the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must
9  come forth with evidence from which a jury could reasonably render a verdict in the
10 non-moving party's favor." *Id.* (citations omitted).  The nonmoving party may defeat the
11 summary judgment motion only by setting forth specific facts that illustrate a genuine
12 dispute requiring a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477
13 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence,
14 Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as
15 to the material facts" will not defeat a properly-supported and meritorious summary
16 judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
17 586–87 (1986).

18 For purposes of opposing summary judgment, the contentions offered by a *pro*
19 *se* litigant in motions and pleadings are admissible to the extent that the contents are
20 based on personal knowledge and set forth facts that would be admissible into evidence
21 and the litigant attested under penalty of perjury that they were true and correct. *Jones*
22 *v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

23 **III.   DISCUSSION**

24 **A.   Civil Rights Claims under 42 U.S.C. § 1983**

25 42 U.S.C. § 1983 aims "to deter state actors from using the badge of their
26 authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*,
27 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th
28 Cir. 2000)). The statute "provides a federal cause of action against any person who,

acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Count I – First Amendment Retaliation

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. The adverse action must be such that it "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quoting *Rhodes*, 408 F.3d at 568).

Federal courts were not created to supervise prisons, but to enforce the constitutional rights of all persons, including prisoners. "We are not unmindful that prison officials must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are subject to appropriate rules and regulations." *Cruz v. Beto*,

7

405 U.S. 319, 321 (1982). But prisoners, like other individuals, have the right to petition the government for redress of grievances, which includes the First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. *Brodheim*, 584 F.3d at 1269. "Of fundamental import to prisoners are their First Amendment 'rights to file prison grievances . . .'" *Rhodes*, 408 F.3d at 567 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)). "[B]ecause purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

To prevail against Defendants' motion for summary judgment, Espinosa must demonstrate a triable issue of material fact on each element of his retaliation claim. *Brodheim*, 584 F.3d at 1269 n.3. In support of summary judgment, Defendants argue that Espinosa cannot carry his burden because there is no causal connection between the filing of his grievances and the disciplinary charges he faced, there is no evidence that the disciplinary charges chilled the exercise of his First Amendment rights, and maintaining discipline and order within the prison is a legitimate goal. (ECF No. 66 at 11-12.)

### 1. Retaliatory Motive

An inmate must submit evidence, either direct or circumstantial to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995). "[A] plaintiff must show that his protected conduct was 'the "substantial" or "motivating" factor behind the defendant's conduct.'" *Brodheim*, 584 F.3d at 1271 (quoting *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The plaintiff "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent.'" *Id.* (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

To raise a triable issue as to motive, plaintiff must offer "either direct evidence of

8

1 retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted). Circumstantial motive evidence may include: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse ... action were false and pretextual." *Id.* (internal citation and quotation marks omitted).  However, "mere speculation that defendants acted out of retaliation is not sufficient."  *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

Defendants argue that there is no evidence of a causal connection between the filing of grievances and the disciplinary charges Espinosa faced and evidence shows the cause of Espinosa's disciplinary charges is his own behavior.  (ECF No. 66 at 11.) Defendants also assert that while Espinosa may assert otherwise, his assertions on their own merely constitute "'uncorroborated and self-serving testimony' that is 'blatantly contradicted by the record.'" (*Id.*) (citing *Villiarimo, v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)).[6]

---

[6] The court finds this argument and reliance on the *Villiarimo* case to be unpersuasive and unwarranted.  Although Defendants cite the *Villiarimo* case for their claim that the court can ignore the "self-serving and uncorroborated statements" of Plaintiff, Defendants fail to cite to more recent Ninth Circuit authority, which clarifies the holding of *Villiarimo* and undermine this argument. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017); *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015). Defendants failure to cite to the *Manley* case is particularly troubling because this case was litigated in the District of Nevada by the Nevada Attorney General's Office, who likewise represent Defendants in this action.

Specifically, these cases clarified that because a party's own testimony will nearly always be "self-serving," the mere self-serving nature of testimony permits a court to discount that testimony *only* where it "states only conclusions and not facts that would be admissible evidence." *Manley*, 847 F.3d at 711 (9th) (quoting *Nigro.*, 784 F.3d at 497-98 (9th Cir. 2015)). Moreover, a court ruling on a motion for summary judgment may not engage in "[c]redibility determinations" or "the weighing of evidence," as those are functions reserved for the jury. *Manley*, 784 F.3d at 711 (quoting *Anderson*, 477 U.S. at

Espinosa seems to contend that the proximity in time between the filing of the grievance related to Defendant Ward and the issuance of the notice of charges provides circumstantial motive evidence. (ECF No. 89 at 8, 25-27.) Espinosa claims he filed the grievance 17 days before the notice of charges was filed.[7] (*Id.*) However, as Espinosa readily acknowledges, he is an active jailhouse lawyer who regularly files grievances and lawsuits regarding prison conditions and assists other inmates in doing the same. Actions taken by prison officials are therefore likely to be close in time to his litigation and grievance activity. To show but-for causation in this situation, Espinosa must show more than proximity in time. However, aside from his bare assertions, Espinosa provides no evidence that the alleged retaliatory actions occurred *because of* his grievances or lawsuits. *See Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 753 (9th Cir. 2010) (where plaintiff relies on circumstantial evidence to show retaliation, that evidence must be specific to defeat a motion for summary judgment). For example, Espinosa does not assert that any Defendant made any retaliatory statements to him or anyone else. Espinosa's mere speculation that there is a causal connection is not enough to raise a genuine issue of material fact. *See Nelson*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). Espinosa has not shown that his First Amendment activity was the substantial or motivating factor behind Defendants' actions, and, therefore, he has not carried his burden of demonstrating a genuine issue for trial. As no

---

255.) Therefore, contrary to Defendants argument, the court cannot simply ignore Espinosa's statements nor can it weigh his statements in ruling on this motion.

As an aside, the court notes Defendants failure to cite to the *Manley* case significantly troubling in this instance as the *Manley* case was litigated in the District of Nevada by the Nevada Attorney General's Office, who likewise represent Defendants in this action.

[7] In his opposition, Espinosa repeatedly refers to a "conspiracy" amongst Defendants to retaliate against him due to his litigation activities (*See e.g.,* ECF No. 89 at 24-29), however, it appears the District Court dismissed his conspiracy claims in both his First Amended and Second Amended Complaints (*See* ECF No. 13 at 12, 16; ECF No. 15 at 9-10.)

10

1  reasonable jury could conclude that the alleged retaliatory acts occurred *because of*
2  grievances or lawsuits, Defendants are entitled to summary judgment.
3      Because the court finds that Espinosa cannot prove that adverse action was
4  taken against him *because of* his protected First Amendment conduct, it need not
5  address Defendants' other arguments or defenses as to the retaliation claim.

    **C.    Counts II and V – Fourteenth Amendment Due Process, Fourteenth Amendment Equal Protection, and Nevada Constitution Article I, § 8**

Espinosa claims Defendants violated his due process rights afforded under the United States and Nevada Constitutions in their handling of a disciplinary hearing held on March 16, 2017 related to a charge of threatening staff. (ECF No. 14 at 15.)

Defendants contend that the sanction imposed does not constitute an "atypical and significant deprivation of liberty" and thus Espinosa has failed to show the implication of a liberty interest. (ECF No. 66 at 14-15.) Nonetheless, Defendants argue that if the sanction imposed is considered an "atypical" hardship, Espinosa was provided the process he was due. (*Id.* at 15.)

Fourteenth Amendment claims for denial of procedural due process entail two components. First, the court must determine that the plaintiff possessed a constitutionally protected interest, such that due process protections apply. *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977). Second, and if so, the court must examine the level of due process demanded under the circumstances. *See id.*; *see also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). A claim lies only where the plaintiff has a protected interest, and the defendant's procedure was constitutionally inadequate.

The Fourteenth Amendment of the United States Constitution guarantees all citizens, including inmates, due process of law. However, the Constitution protects only certain interests with the guarantees of due process; an inmate's right to procedural due process arises only when a constitutionally protected liberty or property interest is at

11

1  stake. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). Such interests may arise from the Constitution itself or from state law.

Under the Due Process Clause, an inmate does not have liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin v. Conner,* 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)). The Clause contains no embedded right of an inmate to remain in a prison's general population. *Id.* at 485–86.

State law also may create liberty interests. Where segregated housing or other prison sanctions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" due process protections arise. *Sandin,* 515 U.S. at 483–84. What matters is not the particular label or characterization of the segregation or sanction, but instead, its underlying nature: "[n]o matter how a prisoner's segregation (or other deprivation) is labeled by the prison or characterized by the prisoner, a court must examine the substance of the alleged deprivation and determine whether it constitutes an atypical and significant hardship...." *Hernandez v. Cox,* 989 F.Supp.2d 1062, 1068–69 (D. Nev. 2013).

When conducting the atypical-hardship inquiry, courts examine a "combination of conditions or factors...." *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir. 1996). These include: (1) the extent of difference between segregation and general population; (2) the duration of confinement; and (3) whether the sanction extends the length of the prisoner's sentence. *See Serrano,* 345 F.3d at 1078 (citing and discussing *Sandin,* 515 U.S. at 486–87). That a particular punishment or housing placement is more restrictive than administrative segregation or general population privileges is, alone, not enough: even where "the conditions in segregation are worse than those a prisoner will typically encounter in prison, the Court must still consider whether the conditions are extreme enough in nature and duration or whether they will necessarily affect the length of a prisoner's sentence." *Hernandez,* 989 F.Supp.2d at 1069.

1	The sanction Espinosa received was 30-days in disciplinary segregation and the recommendation for a transfer. (ECF No. 66-14.) It is unlikely that a 30-day term in disciplinary segregation could be considered an "atypical and significant hardship," and Espinosa does not make any such allegation or provide any evidence showing this to be the case. *See Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 987-88 (9th Cir. 2014) (twenty-seven-month confinement in segregation without meaningful review imposed an atypical and significant hardship.) Espinosa does not allege that he was not given meaningful review of his classification status while in disciplinary segregation and he does not provide evidence that conditions in disciplinary segregation were atypical in comparison to conditions in administrative segregation or general population housing. (*See* ECF No. 14.) Further, inmates do not have a liberty interest in avoiding a transfer to another prison. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Espinosa, who shoulders the burden of proof on this point, has not designated facts from which a reasonable jury could find he has a liberty interest; thus, Defendants are entitled to summary judgment as to this claim.

Nonetheless, even if the court were to find that Espinosa possessed a liberty interest in his placement in disciplinary segregation, the court also finds that Espinosa was afforded due process. A review of the notice of charges for the February 16, 2017 incident and the summary of the hearing for the notice of charges, shows Espinosa was given a proper hearing before being sentenced to disciplinary segregation. (*See* ECF Nos. 66-12, 66-13, 66-14.) Espinosa was served with the notice of charges within twenty-four hours of the hearing, he was given an opportunity to present evidence and call witnesses, and he did not request counsel. (*See id.*); *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974) (outlining what prison officials must provide an inmate when a protected liberty interest exists and inmate faces disciplinary charges). Thus, because the material facts do not demonstrate a deprivation of Espinosa's Fourteenth Amendment due process rights, the court recommends that Defendants' motion for

summary judgment be granted as to the due process claim under both the U.S. and Nevada Constitutions.[8]

### D. Counts III and IV – Eighth Amendment Deliberate Indifference to Serious Medical Needs and Nevada Constitution Article I, § 6

In his opposition, Espinosa states that he wishes to voluntarily dismiss Counts III and IV, the Eighth Amendment and Nevada Constitution Article I, § 6 claims. (*See* ECF No. 89 at 16, 22.) Accordingly, the court recommends that Espinosa's Counts III and IV claims be dismissed, with prejudice, and that Defendants Bennett and Bellanger be dismissed from this action.

### E. Supervisory Liability

Because the court finds that Espinosa's constitutional rights were not violated and recommends that each of his claims be dismissed, the court similarly recommends that the supervisory liability claim against Defendants Dzurenda, Wickham, and Baze be dismissed.

## IV. MISCELLANEOUS MOTIONS

Also pending before the court is Espinosa's motion for adverse jury instruction (ECF No. 80) and his motion for default judgment (ECF No. 88). Because the court recommends that Defendants' motion for summary judgment be granted, in its entirety, the court also recommends that Espinosa's motion for adverse jury instruction and motion for default judgment (ECF Nos. 80, 88) be denied as moot.

## V. CONCLUSION

Based upon the foregoing, the court recommends that Defendants' motion for summary judgment (ECF No. 66) be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and

---

[8] Because the court finds that no due process violation occurred, Espinosa's related equal protection claim also necessarily fails. Finally, because the court finds that no constitutional violations occurred, it need not address Defendants' arguments related to qualified immunity.

Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 66) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Doe Defendants be **DISMISSED** from this action based on Espinosa's failure to timely identify them;

**IT IS FURTHER RECOMMENDED** that Defendants Ferrell and Deal be **DISMISSED** from this action for failure to effectuate service pursuant to Fed. R. Civ. P. 4(m);

**IT IS FURTHER RECOMMENDED** that Espinosa's motion for adverse jury instruction (ECF No. 80) and motion for default judgment (ECF No. 88) be **DENIED** as moot;

**IT IS FURTHER RECOMMENDED** that Espinosa's motion for leave to file exhibits under in-camera submission (ECF No. 90) is **GRANTED**, to the extent described above, and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly.

**DATED**: June 11, 2020

_____
**UNITED STATES MAGISTRATE JUDGE**